Lloyd Melvin LASLOVICH, Plaintiff
in Error,

v.

The STATE of Oklahoma, Defendant
in Error.

No. A–13281.

Court of Criminal Appeals of Oklahoma.

Dec. 26, 1962.

Rehearing Denied Feb. 6, 1963.

Lloyd Melvin Laslovich, pro se.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

This is an appeal by Lloyd Melvin Laslovich, plaintiff in error, defendant below.

This defendant and Gene Phillips were charged jointly in the Superior Court of Comanche County, Oklahoma, by information, with breaking and entering on September 24, 1961, in the night time and shortly after 12:00 a. m., a certain business building of one Henry Fink, located at 1717 Sheridan Road in Lawton, said county and state; said building being a place where personal property of the said Henry Fink was kept, with the intent to and "did stealthily, burglariously and feloniously take, steal and carry away * * * 1 transistor radio, 1 electric razor, 10 boxes of .22 shells, 2 Timex witches, 2 .22 pistols, and approximately $500 in good and lawful money of the United States", the personal property of the said Henry Fink.

On March 2, 1962 the defendants were arraigned, and Gene Phillips asked for and was granted a severance.

Thereafter, on March 19, 1962 the cause was transferred to the district court of Comanche County, where this defendant was tried by a jury, found guilty and his punishment fixed at five years in the penitentiary. Judgment and sentence was entered accordingly, from which this appeal has been perfected.

The evidence herein clearly discloses that the Fink place of business was broken into by Gene Phillips and this defendant on the day and at the time alleged, and that they took from said establishment the personal property described in the information, and a number of other articles intro-

duced in evidence and identified by Mr. Fink as coming from his place of business.

The evidence further shows that two police officers were proceeding north on Sheridan Road shortly after midnight on the said date, and observed an automobile bearing Oklahoma license plate 1–28895 coming out from behind some buildings at Sheridan and Kingsbury Roads, which car turned north. At Seventeenth Street and Taylor the driver of the car stopped for a stop-sign. The officers pulled up close and turned their spot-light through the back window of the car. The occupants turned around and looked back into the light, then took off at a high speed. The occupants were clearly visible to the officers, the testimony shows. Laslovich was driving, and Phillips was on the right-hand side. After a chase of several blocks, the driver turned into a vacant field at Thirteenth and Irvin. There they abandoned their car, and Phillips was knocked down by the police car while trying to escape on foot, but Laslovich got away.

In the glove compartment of the defendant's car was found the bill folds of both Laslovich and Phillips. A shirt fell out of the car where it was stopped in the vacant field, and two receipts were found in the pocket of the shirt, one containing the name of Phillips, and the other the name of this defendant.

At the point where Phillips was run down, a pistol and sack of money were found, the sack containing $486.95. The sack the money was in was identified by Mr. Fink, who also identified the .22 pistol and a yellow City National Bank money-sack containing two reels and some .22 shells as having been taken from his place of business. Another money sack, containing $814.95 was not recovered.

A short distance from the abandoned automobile and in the direction Laslovich made his escape, an electric razor and case were found, which Mr. Fink identified as belonging to him.

Both the police officers identified Laslovich in the court room at the time of the trial, and also identified Gene Phillips, originally charged with this defendant and who had been previously sentenced to the penitentiary for three and a half years, as being the two men the officers saw by aid of the spotlight when they came upon the defendant and Phillips at the stop-sign, and when they abandoned their automobile in the field.

The defendant offered no defense.

 We are of the opinion that the evidence presented by the state is more than ample to convict the defendant of the crime of second degree burglary, as laid in the information. This situation presented a question of fact within the sole province of the jury. Sadler v. State, 84 Okl.Cr. R. 97, 179 P.2d 479.

No grounds appear in the evidence warranting a reversal herein. However, there is a situation appearing in the record that merits special consideration.

After the court convened and just before the jury was empaneled, Mr. Oaks, counsel for the defense, out of the hearing of the jury, informed the court that he wished to request a ninety day period of hospital observation of the defendant Laslovich to determine his mental competency. He told the court he had just been advised by the defendant that he had been ordered committed to some California mental institution and had escaped before he was committed. Counsel for defendant further advised the court that he was in no position to prove this. The court said that under the circumstances he would proceed with the trial, and in the event the defendant was found guilty, that under the law, before he pronounced sentence, he would order such observation and examination, and if the results of the examination created any doubt in his mind, he would impanel a jury to determine the issue. The court's apparent lack of doubt of the insanity of the defendant Laslovich was not only predicated upon the fact of no proof thereon, but

was also predicated, according to the record, upon the fact as stated by the court:

"Mr. Laslovich has been before me two or three times and he appears to be intelligent and normal and I don't have any indication with my previous contact with him, or even today there is no evidence of mental illness."

The Court then added:

"We won't enter judgment and sentence until we give him a chance to be observed up there; and if that indication is that he is not mentally healthy, I will set the verdict aside."

After the verdict was rendered on April 9, 1962 an application was filed for a mental examination and observation of the defendant to determine his sanity. That application was granted on April 12, 1962. Such an examination and observation was conducted by order of the court by the authorities of the Western State Hospital, Fort Supply, Oklahoma. A report was made by Dr. H. B. Whitten and staff on May 4, 1962 to the effect that defendant knew the difference between right and wrong, and was capable of assisting in his defense. Thereafter judgment and sentence on the jury's verdict was entered on May 11, 1962.

▓ It is apparent that the information originally furnished by defendant with reference to his mental condition was not sufficient to raise a doubt in the mind of the trial court, but buttressed by his own prior observation of Laslovich, his claim was possibly regarded by the trial court as a delaying tactic on the part of the defendant. Based upon that premise, the trial court proceeded with the trial, but according to his promise and by authority of law, an examination was ordered as he had agreed would be done, in the event of a verdict of guilty. This procedure denied the defendant none of his substantial rights, and was according to the provisions of 22 O.S.1961 § 1162, reading:

"*When an indictment or information is called for trial, or upon conviction* *the defendant is brought up for judgment, if a doubt arise as to the sanity of the defendant,* the court must order a jury to be impaneled from the jurors summoned and returned for the term, or who may be summoned by direction of the court, to inquire into the fact." (Emphasis now supplied)

It is also apparent, under the statute quoted, that the defendant's rights may be protected either at the commencement of the trial or before the entry of judgment and sentence. In either case, the defendant's right to a jury trial is predicated upon the trial judge's doubt as to the issue of present sanity.

▓ In this connection, in Bingham v. State, 82 Okl.Cr.R. 5, 165 P.2d 646, this court said:

"Under statute, if doubt arises in mind of court regarding sanity of defendant, he must order a jury to be impaneled from jurors summoned and returned for the term, or who may be summoned by direction of the court, to inquire into sanity of defendant, either before the trial or before judgment and sentence is pronounced.

"The question of defendant's sanity may be raised on application for continuance, motion for new trial, motion in arrest of judgment, by ex parte affidavit or by a declaration of bystander, or by court of its own motion and although the court cannot act arbitrarily, it may look to source of information and motive in determining whether there is a doubt which would justify a sanity hearing.

"If a claim coming from a reputable source is made, either at beginning of trial in criminal case or at time for judgment and sentence, that defendant is presently insane, with a reasonable showing or tender of proof in support thereof, trial court has duty of submitting the question to a jury.

"The inquiry to be submitted to a jury in a proceeding under statute for a

determination as to defendant's sanity, is whether the defendant is mentally competent to make a rational defense, and not whether defendant is able to distinguish between right and wrong."

 In the body of the opinion, it was further said:

"The next question then arises as to whether, under the evidence before the court and in the absence of a request from defendant's counsel, the trial court should of its own motion have empaneled a jury before pronouncing judgment on the conviction to determine the issue of defendant's present sanity.

"Before a trial court empanels a separate jury to try the issue of defendant's present sanity, under the Statute, a doubt must arise in the mind of the court. * * * (B)ut the existence of a doubt as to defendant's sanity must arise from facts and circumstances of a substantial character. In other words, there must exist reasons to believe that the claim of insanity made on behalf of the accused is genuine and not simulated as a means of defeating or delaying the law's penalties in cases where all other means of evading punishment would seem hopeless."

See also Grayson v. State, 85 Okl.Cr.R. 266, 188 P.2d 696; and Wisenhunt v. State, Okl.Cr.App., 279 P.2d 366.

It thus appears that the trial court had no doubt about this defendant's sanity, but in fairness and true to his promise, before judgment and sentence he granted the observation and examination promised in the event of conviction. The defendant was deprived of no substantial rights provided under the provisions of Title 22 O.S. 1961 § 1162.

The judgment and sentence is, accordingly, affirmed.

NIX, P. J., and BUSSEY, J., concur.