Alvin **ANDERSON**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. A–18002.

Court of Criminal Appeals of Oklahoma.

June 20, 1973.

Marion M. Dyer, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., John C. Williams, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Alvin Anderson, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Tulsa County, Case No. CRF–72–626, for the offense of Robbery With Firearms, his punishment was fixed at twenty (20) years imprisonment and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial Aurelia Lynch testified that on March 28, 1972, she owned a liquor store at 301 N. Denver in Tulsa County; that at approximately 9:20 p.m. a colored man, armed with a pistol, opened the back door and said "This is a holdup." There was another black man at the cash register talking to an employee, Perry Evans. The armed subject told Evans to give the money to the man at the cash register. After Evans gave the man the money, the armed subject said "Come on. Let's go out the back door." (Tr. 161) As they were leaving, the man who had been standing at the cash register grabbed a half-pint bottle of Colonel Lee Bond Whiskey. She testified that she did not get a good enough look at the person at the front of the store to make an identification of him. Seventy-three dollars ($73) in bills and a roll of quarters were taken. She identified State's Exhibit 4 as being similar to the money wrapper she used on quarters.

Perry Evans testified that he was employed at Lynch's Liquor Store and that at approximately 9:00 a person, whom he identified in court as defendant, came into the liquor store. He asked the defendant if he could help him and the defendant replied that he was looking for wine. The back door was jerked open and a black male came into the store with a gun. The armed man said "Give me your money. Give it to the fellow in the front." (Tr. 186) He opened the cash register and gave the bills and a roll of quarters to the defendant. He identified State's Exhibit 4 as being similar to their quarter wrappers. The armed man said "Let's go. Let's go out the back." Both subjects then left.

Officer Roy Hunt testified that at approximately 10:00 p.m. on the evening in question, he investigated a "shootout" at a location just east of the liquor store. He was advised by another police officer that one of the subjects arrested would "point out the location of another participant in this armed robbery." The officers proceeded to 609 N. Cheyenne. They went to the top of the stairwell and knocked on an apartment door several times, announcing in a loud voice that they were police officers. When no one responded, Officer Hunt kicked the door open. They entered the apartment and found the defendant laying on a bed in the bedroom with the lights out. Officer Hunt advised the defendant that he was under arrest and assisted him in getting up from the bed. He instructed the two officers standing at the foot of the bed to take custody of the defendant. The defendant, who was dressed, requested permission to put on his shoes and started to sit down on the foot of the bed. Hunt advised him not to sit down. Hunt lifted up the mattress on the bed and observed a half-pint of Colonel Lee Bond Whiskey laying on the box springs. Another officer made the statement "Look" and Hunt observed a pile of change and bills in the corner of a closet adjacent to the bed.

Officer Cox testified that he assisted Officer Hunt and other officers in the arrest of the defendant. He observed several quarters laying on the floor of the closet. He picked up a pile of clothing on the

closet floor and observed bills and more change.

Detective Campbell testified that he found the State's Exhibit 4, the quarter wrapper, in the south window of the bedroom.

Officer Brightwell and Officer Parke testified that they assisted in the arrest of the defendant.

■ The first proposition asserts that the jury from which the trial jurors were selected was improperly impaneled and that said jury panel did not represent a cross section of the community.

Although this proposition is improperly before this Court in that defendant failed to cite authority in support of the proposition, we observe that the same is without merit. In the recent case of Stidham v. State, Okl.Cr., 507 P.2d 1312, in dealing with a similar proposition, we stated:

"Defendant charges that his rights were violated because no non-property owners or non-taxpayers were included on the jury panel chosen according to 38 O.S. 1971, §§ 18 and 33.

"This Court upheld the constitutionality of this State's jury selection statutes in Acuff v. State, Okl.Cr., 283 P.2d 856. This decision was cited with approval in the 1969 case of Porter v. District Court of Oklahoma County, Okl.Cr., 462 P.2d 338. The same result was reached in two other recent cases. Moore v. State, Okl.Cr., 461 P.2d 1017, and Wolfchief v. State, Okl.Cr., 461 P.2d 949. Furthermore, the burden is upon the defendant to show that he was prejudiced in some manner by the selection system."

■ The second proposition contends that the trial court erred in overruling defendant's motion to suppress the evidence secured by an illegal search and seizure. Defendant argues that he was in custody with the premises secured and that there was no evidence or testimony that the officers were in fear for their persons in searching the closet and under the mattress for weapons.

We are of the opinion that this proposition is likewise without merit. The arresting officers knew that an armed robbery had been committed and had reason to believe that the defendant had committed the same. They were directed to the apartment and upon entering the apartment found the defendant laying in a darkened bedroom. Officer Hunt advised the defendant that he was under arrest and not to make any sudden moves. Officer Hunt testified as follows:

"Q. (By Mr. Hooper) Why didn't you let him sit down and put his shoes on?

"A. Well, primarily because we didn't know what was in the apartment, weaponwise. I didn't—didn't want to afford him the opportunity to procure a weapon of any kind and to—for our safety primarily." (Tr. 297)

In the recent case of Mahan v. State, Okl.Cr., 508 P.2d 703, we stated:

"This Court has often held that where a person is legally arrested for an offense, without a warrant, whatever is found upon his person or within his control may be seized and held for evidence in the prosecution. Roberson v. State, Okl.Cr., 456 P.2d 595 (1967); Yeager v. State, 43 Okl.Cr. 318, 278 P. 665 (1929); Cowan v. State, 38 Okl.Cr. 399, 262 P. 710 (1928). In order to search without a warrant, the search must be contemporaneous, both in time and place, with the arrest. Faubion v. United States, 424 F.2d 437 (10 Cir. 1970). The officer may lawfully search the person and the immediate surroundings of the accused for the fruits of the crime or to secure evidence which might have been used in the perpetration of the alleged crime. Ward v. State, 95 Okl.Cr. 391, 246 P.2d 765 (1952)."

■ The third proposition asserts that the trial court erred in overruling defendant's motion for a mistrial based on the prejudicial admission into evidence of hearsay statements.

The record reflects that Officer Hunt testified as follows:

"A. . . . And one of the patrol officers, I don't recall exactly which one it was, I believe it was Officer Cox, but I'm not sure, called my attention—or called me over to his patrol car after we had two subjects there in custody and requested —. . .

＊　＊　＊　＊　＊　＊

"A. He advised me that the subject that we had in custody would show us where another participant in the armed robbery was located, at which time—. . .

＊　＊　＊　＊　＊　＊

"A. That he would point out the location of another participant in this armed robbery. . ." (Tr. 285–287)

The testimony was admitted over the timely objection by the defendant. We are of the opinion that the hearsay testimony was improperly admitted. In Jones v. State, Okl.Cr., 488 P.2d 372 we stated:

"We further held in Engst v. State, Okl.Cr., 474 P.2d 966, that where hearsay testimony is improperly admitted not determinative of defendant's guilt, but of such a nature as may have prejudiced the jury in the rendering of the punishment, it will be considered by this Court as grounds for modification."

We, therefore, are of the opinion that justice would best be served by modifying the judgment and sentence to a term of fifteen (15) years imprisonment and as so modified, the judgment and sentence is affirmed.

BLISS, P. J., concurs.

BRETT, J., concurs in results.